J-S31016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: D.M.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.K.E., FATHER | No. 145 MDA 2015 |

Appeal from the Order entered December 22, 2014,
in the Court of Common Pleas of Lancaster County,
Orphans' Court, at No(s): 1387 of 2013

BEFORE: BENDER, P.J.E., ALLEN, and WECHT, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED JUNE 24, 2015**

Appellant, B.K.E., ("Father") appeals from the trial court's order terminating his parental rights to his son, D.M.H. ("Child"), (born in December of 2002).[1] After a thorough review of the record, we affirm.

On November 22, 2011, the Lancaster County Children and Youth Social Service Agency ("CYS") first learned of this family due to burns, suspicious marks and bruises found on Child's body. Child was removed from the care of Mother and Mother's husband, B.J. ("Step-father"). Child was adjudicated dependent on January 30, 2012. On June 7, 2012, Child was placed in foster care.

In 2003, a support order was entered against Father. Father lived with his wife and two daughters in New Jersey. Father last saw Child in the summer of 2008. On June 19, 2013, CYS filed a petition to terminate the parental rights of Mother and the unknown birth father.

_____

[1] On March 4, 2014, the trial court terminated the parental rights of K.J., ("Mother"), to Child. Mother is not a party to this appeal, nor did she file a separate appeal.

On September 5, 2014, Father contacted CYS after learning that Child was in CYS's custody. On September 8, 2014, Father contacted CYS for the last time. On October 8, 2014, foster parents filed a report of intention to adopt Child. On October 23, 2014, Father filed a petition to set aside termination of parental rights and to intervene in any pending adoption.

On November 25, 2014, CYS filed a petition to terminate Father's parental rights. On November 26, 2014, foster parents filed an answer to petition to set aside termination of parental rights. On December 5, 2014, CYS filed their response to the petition to set aside the termination of parental rights.

On December 22, 2014, a hearing was held on that petition. At the termination hearing, Brandy Cromley, a CYS caseworker; Rene Dolly, a CYS caseworker; Crystal Bowman, a CYS paralegal; Rosa Morales Wilson, a CYS technician; Kelly Jacobs, an outpatient therapist; D.E., Father's wife; P.H., Child's maternal aunt; P.J.F., Child's foster father; and Father testified.

A hearing was held on December 22, 2014, after which the trial court terminated Father's parental rights to Child. On January 6, 2015, Father filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b)

Father sets forth his issues on appeal as follows:

1. Whether 23 Pa.C.S.A. 2511(a)(1) is inconsistent with the Due Process and Equal Protection Clauses of the [Fourteenth] Amendment of the U.S. and Pa. Constitutions in requiring termination of a non-custodial parent's rights to a child with whom he was consistently involved where birth mother

absconded with the child, thwarted Father's efforts to ascertain [Child]'s whereabouts by deception, where a child support order remained in place in [Child]'s birth county and where Father's identity could easily have been ascertained had CYS made sufficient investigation.

2. If 23 Pa C.S.A. 2511(a) is deemed constitutional, whether the lower court committed an abuse of discretion and/or erred as a matter of law in involuntarily terminating Father's parental rights under 23 Pa.C.S.A. Section 2511(a)(1) where such determination was not supported by clear and convincing evidence.

3. Whether under 23 Pa.C.S.A. 2511(b), the trial court erred as a matter of law and committed reversible error when it involuntarily terminated Father's parental rights without giving primary consideration to the effect that termination would have on the developmental, physical and emotional needs of the 12 year old child who ran away from his foster home on two occasions, and where [Child] was not informed that his birth Father, who was not the cause of [Child]'s dependency placement, recently became aware of his whereabouts and predicament and desires reunification.

4. Whether Father's constitutional right to a fair hearing and impartial hearing was thwarted by ineffective assistance of counsel.

5. Whether Father's constitutional right to a fair and impartial hearing was thwarted by the lower court's general bias throughout the termination hearing.

Father's Brief at 3-4.

Where a party raises ineffective assistance of counsel in a termination of parental rights case, "we review the record as a whole to determine whether or not the parties received a 'fundamentally fair' hearing: a finding that counsel was ineffective is made only if the parent demonstrates that counsel's ineffectiveness was the cause of the decree of termination." ***In re***

*J.T.,* 983 A.2d 771, 775 (Pa. Super. 2009) (internal citations omitted). Accordingly, our review of the ineffective assistance of counsel claim is inextricably linked to our determination of whether the trial court's termination order is supported by the record.

Our standard of review regarding orders terminating parental rights is as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid.

*Id.* at 806. We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa.

- 4 -

Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004). Accordingly, as the trial court focused on Section 2511(a)(1) in terminating Father's parental rights, we likewise will focus on that section in our review.

In terminating Father's parental rights, the trial court relied upon Section 2511(a)(1) and (b) which provide:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> * * *
>
> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not

consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have explained this Court's review of a challenge to the sufficiency of the evidence to support the involuntary termination of a parent's rights pursuant to Section 2511(a)(1) as follows:

> To satisfy the requirements of Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,
>
>> Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.
>>
>> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted).

Regarding the definition of "parental duties," this Court has stated:

- 6 -

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with . . . her physical and emotional needs.

***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

In Father's first two issues, he argues that the trial court committed an abuse of discretion in involuntarily terminating his parental rights to Child.

The trial court found that, aside from paying child support, Father "failed to perform parental duties or undertake parental responsibilities" since he was separated from Child in 2008. Trial Court Opinion, 2/12/15, at 12. The trial court explained:

- 7 -

Father has testified that he could not find Mother or [Child]. While this Court does agree that there were obstacles for Father to overcome, in that Mother left abruptly without leaving an address for Father or contacting him, [the trial c]ourt is of the opinion that a parent must use all reasonable efforts within their power to overcome obstacles and remain in their child's life. Father failed to do so.

Parenting a child is more than paying child support. Father effectively relied on Mother's family, and social media to locate Mother and [Child]. Despite having a significant income, he did not hire an attorney; he did not hire a private investigator; he did not search for Mother's marriage license despite knowing she was married; he did not contest his child support modifications, or request information, or seek a hearing to obtain information about Mother and [Child], or file a custody action. All of these suggested, although not all-inclusive, actions were reasonable and were within his control and ability to do. Any one of these avenues might have provided him with information about where Mother and [Child] were living. Furthermore, Father knew that maternal grandparents were having contact and going to visit Mother in 2011, and he made no efforts to attempt to legally compel maternal grandparents to divulge their whereabouts, through subpoena or any other means in either a support or custody proceeding. The point is that Father did nothing except search social media, occasionally talk to maternal relatives and drive by Mother's old residence. He did not use the reasonable and available resources and options available to him to maintain contact and a role of importance in [Child]'s life.

*Id.* at 12-13.

We have stated that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." ***In re Z.P.***, 994 A.2d 1108, 1125 (Pa. Super. 2010). Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a

permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004). With respect to Section 2511(a)(1), the trial court in this case found clear and convincing evidence that Father demonstrated a settled purpose of relinquishing his claim to Child and failed to perform his parental duties. After our careful review of the record, we find that the trial court's credibility and weight determinations are supported by competent evidence in the record. *In re Adoption of S.P.*, 616 Pa. at 325-326, 47 A.3d at 826-827. Accordingly, the trial court did not abuse its discretion in terminating Father's parental rights pursuant to Section 2511(a)(1).

In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court recently stated:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d at 1121. This Court has

observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008).

Father argues that the trial court's assessment of Section 2511(b) is inadequate because the record lacked competent evidence that termination of Father's parental rights would serve the best interest of Child. Father's Brief at 19. Father also asserts that the trial court did not analyze the effect of the severance of their relationship on Child. *Id.* at 22.

The trial court found that termination of Father's parental rights is in the best interest of Child and that termination of Father's parental rights would not be harmful to Child. Trial Court Opinion, 2/12/15, at 20. Child's therapist, Ms. Kelly Jacobs, testified that Child has an adjustment disorder with mixed anxiety and depressed mood as a result of being the victim of physical abuse as a child. N.T., 12/22/14, at 76. Ms. Jacobs testified that Child has made substantial improvements and she testified that foster parents' unconditional love has helped him progress. *Id.* at 77. Ms. Jacobs testified that Child has "very little recollection" of Father. *Id.* at 79. Ms. Jacobs testified that Child is aware that he has a biological father, and that Child stated he does not have a relationship with Father. *Id.* at 79-80. Ms. Jacobs testified that it is in the best interest of Child to have "permanency with this family he's been with for two and a half years." *Id.* at 80. Ms.

Jacobs testified that "trying to reintroduce or establish a relationship with [Father] especially if it were to be in a caretaker role that would be even more difficult for [Child] because he does have negative past experience with abandonment." *Id.* Ms. Jacobs testified that it would not be detrimental to child if Father's rights were terminated. *Id.* at 88. The trial court found the testimony of Ms. Jacobs to be credible. We defer to the trial court's determination of credibility, absent an abuse of discretion, and discern no such abuse in its finding credible the testimony of Ms. Jacobs. *See In re S.H.*, 879 A.2d at 805.

The trial court found that the record established that "Father's desire to now be a parent, after a six year absence, is too little and too late." Trial Court Opinion, 2/12/15, at 19. The trial court concluded, "there is no relationship to continue between parent and child in this case because Father has not been involved in the life of the child in any meaningful way since Mother left in 2008." *Id. See In re K.Z.S.*, 946 A.2d at 763 (In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists.).

While the trial court recognized that Father professed that he loves Child and wants to maintain a relationship with Child, we have held that a parent's love of her child, alone, does not preclude termination. Trial Court Opinion, 2/12/15, at 19; *In re L.M.*, 923 A.2d 505, 512 (Pa. Super. 2007)

- 11 -

(stating that a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights).

As part of its bonding analysis, the trial court examined Child's relationship with his pre-adoptive caregivers. "The strength of emotional bond between a child and a potential adoptive parent is an important consideration in a 'best interests' analysis." *In re I.J.*, 972 A.2d 5, 13 (Pa. Super. 2009). Here, the trial court observed:

> A child needs more than financial support from a parent. The pre-adoptive parents filled the parental void and have been providing love, support, and permanency to [Child] on a daily basis for the last two and one half years. [Child] is thriving in the care of pre-adoptive parents. He now lives in an intact family. [Child] is safe and secure. [Child] is loved. This relationship with his pre-adoptive parents has not occurred overnight. It has been an ongoing process. His life with pre-adoptive parents must be maintained and kept intact for his emotional and developmental needs and welfare. It is in the best interest of [Child] that this parent-child relationship be allowed to continue and thrive.

Trial Court Opinion, 2/12/15, at 19-20. Notably, Ms. Jacobs testified that it would be emotionally detrimental to Child if Child were removed from foster parents. N.T. 12/22/14, at 88.

In light of the above, it is clear that the record supports the trial court's decision to terminate Father's parental rights.

Father asserts that but for counsel's act of not objecting to inadmissible evidence and not presenting any evidence regarding Section 2511(b), CYS could not have established grounds for termination under Section 2511(a)(1) or (b). In this case, we find that a fair hearing was held,

and that there was an abundance of evidence to support the trial court's termination of Father's parental rights. Counsel was aware of the overwhelming evidence against Father. Counsel cross-examined each of CYS's witnesses. Additionally, counsel did not present evidence relative to Section 2511(b) because Father had no relationship with Child, and Father had not seen Child since 2008. Thus, counsel's alleged ineffectiveness was not a factor in the trial court's decision. Father thus has failed to establish that counsel's alleged ineffectiveness was the cause of the termination decree. *In re J.T., supra*.

Finally, we find no merit to Father's assertion that the trial court acted with bias against him. Father argues that the trial court made a "detailed inquiry, geared toward establishing termination of [Father]'s parental rights." Father's Brief at 25. Father also contends that the trial court exhibited bias by questioning the expert witness about purported trauma suffered by Child. However, our review indicates that the trial court questioned Ms. Jacobs to assist the trial court in determining whether the termination of Father's parental rights are in Child's best interest. *See* Trial Court Opinion, 2/12/15, at 14. The trial court did not abuse its discretion because the trial court may examine a witness regardless of who calls the witness. Our review discloses no abuse of discretion. Accordingly, we affirm the trial court's order terminating Father's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/24/2015